**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

PAMELA INDIA BERNSTEIN,     )
                       )
     Plaintiff,     )
                       )
   v.               )     Civil Action No. 02-133 (GK)
                       )     Civil Action No. 02-1615 (GK)
                       )
DEPUTY MARSHAL          )
CHARLES ROBERTS, et al.,   )
                       )
     Defendants.    )
_____)

### <u>MEMORANDUM OPINION</u>

Plaintiff, Pamela India Bernstein, brings this action against Deputy United States Marshals Pat Coulson and Charles Roberts, in their individual capacities ("Government Defendants"), Martin Mooradian, Diana Brownell, and the estate of Michael Wueste.[1] With respect to the Government Defendants, Plaintiff alleges, among other things, violations of her Fourth Amendment right against unlawful entry into her home and seizure of her property pursuant to <u>Bivens v. Six Unknown Agents of Fed. Bur. of Narcotics</u>, 403 U.S. 388 (1971), and 42 U.S.C. Section 1983.[2] This matter is before the Court on the Government Defendants' Second Partial Motion for Summary Judgment, [**#115**], which seeks dismissal of Plaintiff's Section 1983 claim. Upon consideration of the Motion, Opposition,

---

[1] In consolidated civil case 02-1615, the United States is the Defendant.

[2] The Section 1983 claim was added in Plaintiff's Second Amended Complaint, filed on March 21, 2004.

Reply, and the entire record herein, and for the reasons stated below, Defendants' Motion is **granted**.

## I.    BACKGROUND

This is the fifth Memorandum Opinion issued in this case. As such, the Court will recite only those facts pertinent to this Motion. A more complete recitation of the facts can be found in the Court's December 20, 2005 Memorandum Opinion on the Government Defendants' first Motion for Summary Judgment.[3] See Docket # 124.

On June 6, 1995, the Circuit Court of Fairfax County, Virginia, rendered a $500,000 judgment against Fort Beauregard Development Corporation and Carl Bernstein, Plaintiff Pamela Bernstein's husband. That judgment was domesticated in the Superior Court of the District of Columbia ("Superior Court") on September 8, 1999. On March 31, 2000, Mooradian, attorney for one of the parties in the Virginia action, and Wueste, an attorney and party in the domesticated judgment, requested that the Superior Court issue a Writ of Fieri Facias ("Writ") to satisfy the domesticated judgment. The Writ explicitly authorized the seizure of Carl Bernstein's property located at 4482 Reservoir Road, N.W., Washington, D.C., within sixty days of its issuance. The Writ is date-stamped April 5, 2000, making its return date June 4, 2000.

---

[3]  Moreover, for purposes of brevity, fact citations have been omitted from this Opinion.

On June 23, 2000, while Plaintiff was out of town, United States Deputy Marshals Coulson and Roberts, and Wueste arrived at her home at 4482 Reservoir Road, N.W., with a property appraiser, a moving truck, and three movers to execute the Writ.  It is undisputed that the Writ had expired 19 days prior to its execution.

Plaintiff alleges that the Government Defendants and Wueste then unlawfully entered her home on the expired Writ, without the permission of Carl Bernstein, who was home at the time, and proceeded to seize her personal property.  After returning to Washington, D.C., Plaintiff filed a Notice of Claim and Exemptions in Superior Court, asking for the return of the property, which was granted by the D.C. Superior Court.

The property was returned to Plaintiff on December 21, 2000, approximately six months after it was seized.  Thereafter, Plaintiff brought this action seeking punitive and compensatory damages for Defendants' alleged unlawful entry into her home and seizure of her property.

## II.  STANDARD OF REVIEW

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P.

56(c).    A fact is "material" if it might affect the outcome of the
action under the governing law.    Anderson v. Liberty Lobby, Inc.
477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of
demonstrating the absence of a genuine issue of material fact.
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).    The nonmoving
party then must "go beyond the pleadings and by [its] own
affidavits, or by depositions, answers to interrogatories, and
admissions on file, designate specific facts showing that there is
a genuine issue for trial."    Id. at 324 (internal quotations
omitted).    See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C.
Cir. 1987) (nonmoving party has affirmative duty "to provide
evidence that would permit a reasonable jury to find" in its
favor).

In deciding a motion for summary judgment, "the court must
draw all reasonable inferences in favor of the nonmoving party, and
it may not make credibility determinations or weigh the evidence."
Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150
(2000). Ultimately, the court must determine "whether the evidence
presents a sufficient disagreement to require submission to a jury
or whether it is so one-sided that one party must prevail as a
matter of law."    Liberty Lobby, 477 U.S. at 251-52.

## III. ANALYSIS

The Government Defendants seek dismissal of Plaintiff's claims under 42 U.S.C. Section 1983.  That statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Government Defendants' primary argument is that they did not act "under color of" District of Columbia law.[4]  This Court's analysis is governed by Supreme Court precedent and the law as set forth by the United States Court of Appeals for the District of Columbia Circuit in Williams v. United States, 396 F.3d 412, 414 (D.C. Cir. 2004).

In Williams, the D.C. Circuit held that the plaintiff could not bring a Section 1983 action for violation of his Fourth and Fifth Amendment rights because the defendant, a special police

---

[4]   The Government Defendants argue that the legislative history of Section 1983 indicates that its purpose was "to provide a cause of action where there was none," and since Plaintiff may properly bring her action as a Bivens suit, her Section 1983 claims should be dismissed.  Defs.' Second Mot. for Partial Summ. J. ("Defs.' Mot.") at 7.  In light of the Court's ruling, this argument need not be addressed.

officer employed by the United States Government Printing Office,
did not act under color of District of Columbia law.  396 F.3d at
413.  The D.C. Circuit noted that "[t]he traditional definition of
acting under color of state law requires that the defendant in a §
1983 action have exercised power 'possessed by virtue of state law
and made possible only because the wrongdoer is clothed with the
authority of state law.'"  Williams, 396 F.3d at 414 (citing West
v. Atkins, 487 U.S. 42, 49 (1988) (internal quotations omitted)).
The court continued:  "A challenged activity may be state action
when it results from the State's exercise of coercive power, when
the State provides significant encouragement, either overt or
covert, or when a private actor operates as a willful participant
in joint activity with the State or its agents."  Id. (citing
Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S.
288, 296 (2001)).

In Williams, the court focused on three facts in reaching its
conclusion.[5]  First, the defendant was a federal official who
worked as a special police officer employed by the U.S. Government
Printing Office.  396 F.3d at 415.  Second, "[o]nly the federal
government gave him the power to make arrests for violations of
D.C. law; the District of Columbia had no authority over him and

---

[5]  To be clear, the Court is aware that in Williams the D.C.
Circuit did not set forth a rigid three part test.  Nonetheless,
because many of the facts of this case are analogous to those in
Williams, the D.C. Circuit's analysis is directly applicable.

thus did not 'exercise . . . coercive power' through him."   <u>Id.</u>
(citing <u>Brentwood</u>, 531 U.S. at 296).   Finally, D.C. officials
neither "'provided significant encouragement,' nor otherwise
participated in [the] arrest and alleged mistreatment of [the
plaintiff.]" <u>Williams</u>, 396 F.3d at 415 (citing <u>Brentwood</u>, 531 U.S.
at 296).

Applying this analysis to the facts of this case, the Court
holds that Plaintiff's Section 1983 claim against the Government
Defendants must be dismissed.   First, as was the case in <u>Williams</u>,
the Government Defendants are federal officers – they are employed
by the U.S. Marshals Service.

Second, they were "executing a writ under authority given in
28 U.S.C. § 566(c)[6] and 28 C.F.R. § 0.111(b) in their capacities as
Deputy United States Marshals." Defs.' Mot. at 12.   They could not
have lawfully entered the Bernsteins' home without authorization by
the federal government.

Plaintiff argues that "the Deputy Marshals in this case are
assigned to the D.C. Superior Court, which is governed by the D.C.
Code," and that "[t]he 'nature and character' of their work and
actions is based on state law, state codes, state authority, and

---

[6]   28 U.S.C. § 566(c) provides, "Except as otherwise provided
by law or Rule of Procedure, the United States Marshals Service
shall execute all lawful writs, process, and orders issued under
the authority of the United States, and shall command all necessary
assistance to execute its duties."

recognized state functions." Pl.'s Opp'n at 9.  In <u>Williams</u>, the D.C. Circuit rejected a similar argument that "but for the fact that the District of Columbia has enacted a disorderly conduct statute . . . [the defendant] could not have arrested [the plaintiff] under the federal statute giving GPO police officers concurrent jurisdiction with the local police." 396 F.3d at 414. The court's analysis focused instead on the fact that the defendant's authority to act derived from the federal statute, not the D.C. statute.  <u>Id.</u> at 415.  The fact that the scope of Defendants' authority to act was based on the enforcement of D.C. substantive law (the disorderly conduct statute) was not considered determinative by the Circuit.  Finally, as Defendants point out, "[e]ven the D.C. Statute acknowledging that the Marshals Service serves the courts of the District of Columbia, also confirms that such service is 'subject to the supervision of the Attorney General of the United States.'" Defs.' Mot. at 12 (citing D.C. Code § 11-1729).

Third, D.C. officials did not provide "significant encouragement," for Defendants' actions.  Indeed, Plaintiff does not argue that the Government Defendants worked with D.C. officials when executing the Writ.  The Government Defendants' instruction to execute the Writ came from their supervisor within the U.S. Marshals Service, not a D.C. official.  Likewise, the Government Defendants executed the Writ with private parties – a lawyer, a

property appraiser, and three movers – and not any D.C. official.
The Government Defendants' actions therefore did not result "from
the State's exercise of coercive power," or from "significant
encouragement" by the District of Columbia.   See Brentwood, 531
U.S. at 296; Williams, 396 F.3d at 415.

Finally, Plaintiff argues that this Court previously "decided
this issue in this case as a matter of law," when it granted
Plaintiff's Motion to Amend the Complaint to add a Section 1983
claim, and rejected Defendants' arguments in opposition, which
mirrored those made here.   Pl.'s Opp'n at 3.   That is absolutely
incorrect.   The issue then before the Court was whether to grant
leave to amend the Complaint, not whether Plaintiff could state a
claim under Section 1983.   Accordingly, the Court's ruling on that
motion does not necessitate a ruling in Plaintiff's favor here.

**IV. CONCLUSION**

For the foregoing reasons, the Government Defendants' Second
Motion for Partial Summary Judgment, [**#115**], is **granted** and
Plaintiff's Section 1983 claim against the Government Defendants is
**dismissed**.   An Order will issue with this Memorandum Opinion.

December 21, 2005

/s/
GLADYS KESSLER
U.S. District Judge

**Copies to:**  Attorneys of record via ECF